# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

US RIGHT TO KNOW,

    Plaintiff,

    v.                                     No. 1:23-cv-343-WJ-LF

NATIONAL NUCLEAR SECURITY
ADMINISTRATION and the UNITED
STATES DEPARTMENT OF ENERGY,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon Defendants' Motion for Summary Judgment (**Doc. 23**), Plaintiff's Response in Opposition (**Doc. 24**), and Defendants' Reply (**Doc. 25**). Having reviewed the parties' pleadings and the applicable law, the Court **GRANTS** Defendants' motion.

## BACKGROUND

Plaintiff filed the instant case seeking declaratory and injunctive relief (**Doc. 1**) based upon Defendants' alleged failure to conduct a reasonable search and produce responsive documents to a Freedom of Information Act ("FOIA") request. The Defendants are the Department of Energy ("DOE") and its semi-autonomous subagency the National Nuclear Security Administration ("NNSA").

At its core, Plaintiff's suit alleges there should have been more responsive materials—but Defendants conducted their search unreasonably. Defendants respond (and prove) that they conducted a reasonable search and provided all the responsive records.

# I. Relevant Law

## A. The Freedom of Information Act

Congress enacted FOIA in 1966 to "promote public access to federal agency records and information upon request." *Friends of Animals v. Bernhardt*, 15 F.4th 1254, 1260 (10th Cir. 2021) (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 221 (1978)). The purpose of the Act was to "ensure an informed citizenry . . . [had] a check against corruption and [could] hold the governors accountable to the governed." *Robbins Tire & Rubber Co.*, 437 U.S. at 242.

Typically, a person is entitled to copies of a federal agency's records upon making a request that "reasonably describes" the records sought. *Trentadue v. FBI*, 572 F.3d 794, 796 (10th Cir. 2009); 5 U.S.C. § 552(a)(3)(A)(i). That being said, there are certain categories of records that are exempt[1] from disclosure. *See* 5 U.S.C. §§ 552(b)(1)–(9). Once a request is made, the agency: (1) must determine within 20 days whether to comply with the request, and (2) notify the person making the request. If the agency is going to comply, the records "shall be made promptly available" to the requester. 5 U.S.C. § 552(a)(6)(C)(i). If the agency is not going to comply, the requester can seek relief in federal court. *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 155 (1989) (explaining that federal courts have exclusive jurisdiction over FOIA claims).

FOIA does not specify how much effort an agency must put forth in looking for requested records. *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 56 F.4th 913, 922 (10th Cir. 2022). Despite this gap, the Tenth Circuit—as well as other circuits—has adopted a "reasonableness rule." *Trentadue*, 572 F.3d at 797. This rule does not hinge on the outcome of the search. Rather, the

---

[1] FOIA enumerates nine exemptions which provide the Government with the right to withhold documents regarding: (1) national security; (2) internal agency rules and practices; (3) matters specifically exempted from disclosure by another statute; (4) trade secrets or commercial information; (5) inter- and intra-agency memoranda; (6) personnel, medical, and similar files the disclosure of which would constitute an invasion of privacy; (7) certain law enforcement records; (8) records of financial institutions; and (9) geological and geophysical information and data. *Armstrong v. Exec. Off. of the President*, 877 F. Supp. 690, 707 (D.D.C. 1995) (summarizing 5 U.S.C. §§ 552(b)(1)–(9)).

"focal point of the judicial inquiry is the agency's search process." *Id.* Instead of focusing on "whether any further documents might conceivably exist," the Court's job is to assess "whether the government's search for responsive documents was adequate." *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

**B. Summary Judgment Standard**

Defendants moved for summary judgment (**Doc. 23 at 4–5**). Summary judgment is appropriate if the moving party shows that "no genuine dispute" exists about any "material fact." Fed. R. Civ. P. 56; *see also Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir. 1991). After the movant demonstrates "the absence of a genuine issue of material fact," the burden shifts to "the non-movant to establish a genuine issue of fact." *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Est. of Beauford v. Mesa Cnty., Colo.*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (explaining a genuine issue of fact is one that "can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party").

To defeat summary judgment, the nonmovant must set forth specific facts that would be admissible in evidence from which "a rational trier of fact could find for the nonmovant." *Williams v. Owners Ins. Co.*, 621 F. App'x 914, 917 (10th Cir. 2015) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Thus, the Court's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249; *see also Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1150 (10th Cir. 2005).

Here, Plaintiff offers no evidence that undermines Defendants' statement of material facts (**Doc. 24 at 2–5**). Because there are no disputed material facts, summary judgment is appropriate.

## II. Undisputed Facts[2]

On February 28, 2023, Plaintiff submitted a FOIA request to Defendant DOE for records related to COVID-19 and SARS-CoV-2 (**Doc. 23 at UMF ¶ 1**). This request had two parts. *Id*. Part I of the request sought all unclassified intelligence findings or briefings by the Lawrence Livermore National Laboratory ("LLNL")'s Intelligence Programs ("Z-Program" or "Z-Division") related to the origin of COVID-19 and/or SARS-CoV-2. **UMF ¶ 2**. Part II requested documents pertaining to DOE employees: Huban Gowadia, Associate Director for Global Security; David Rakestraw, Senior Program Manager, Global Security Directorate; and Nils Carlson, Senior Fellow & Manager, LLNL Intelligence Programs. **UMF ¶ 3**.

Regarding Part II, specifically, Plaintiff requested "all unclassified email communication from the above-named individuals—including attachments, CC and BCC—related to the structure of SARS-CoV-2 and/or the origins of COVID-19." **UMF ¶ 4; Doc. 23-2**. Additionally, Plaintiff's stated the time period requested was from May 1, 2022, to present. **UMF ¶ 5; Doc. 23-2**.

Defendant DOE sent Plaintiff's FOIA request to Defendant NNSA—who received the request on March 10, 2023. **UMF ¶ 6; Doc. 23-4**. Then, on March 14, 2023, Defendant NNSA acknowledged to Plaintiff that it had received Plaintiff's FOIA request (**UMF ¶ 7; Doc. 23-3**). In Defendants' acknowledgment letter, NNSA told Plaintiff that "many of our records are located off site and require in person handling" and the FOIA process would therefore be delayed. **UMF ¶ 7**.

---

[2] Plaintiff admits to UMF ¶¶ 1–8 & 11 in full. For the reasons described in this Memorandum Opinion and Order, Plaintiff's objections to UMF ¶¶ 9–10 do not create a dispute as to a genuine issue of fact.

4

About a month later, on April 24, 2023, Plaintiff filed a lawsuit against Defendants for declaratory and injunctive relief to compel Defendants to produce records responsive to its FOIA request. **UMF ¶ 8; Doc. 1**.

To this point, Plaintiff "admitted" to every fact (**Doc. 24 at 2–3**).

Next, Defendants assert that on June 2, 2023, NNSA notified Plaintiff that it had completed its search and provided all responsive records that were located (**UMF ¶ 9**; *see* **Doc. 23-4**). Moreover, Defendants assert only five records were located. *Id.* Plaintiff admits that "notification was made and that five records were provided." **Doc. 24 at 3**. At the same time, however, Plaintiff objects to UMF ¶ 9 because: (1) it asserts a legal conclusion, and (2) the exhibit is inadmissible[3] hearsay. *Id.* **at 3–4**. Because Plaintiff offers no evidence to the contrary—outside of a conclusory[4] opinion—this fact is deemed undisputed.

On June 20, 2023, Defendants filed an Answer to Plaintiff's Complaint—which notified the Court that Defendants released all responsive records. **UMF ¶ 10**. Plaintiff objects (**Doc. 24 at 4–5**). Although admitting this fact is accurate, Plaintiff argues UMF ¶ 10 cannot be construed as proving the agency satisfied its legal obligations. *Id.* Unfortunately for Plaintiff, this is merely an objection[5] to the conclusion—and is not a dispute regarding the fact itself.

---

[3] Evidence contained in a declaration must be "based on personal knowledge and must set forth facts that would be admissible in evidence." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015). The Velarde declaration (**Doc. 23-1**) fits into several recognized hearsay exceptions—Fed. R. Evid. 803(6), 803(7), 803(8)—and could be replaced with live testimony at trial. *See Johnson v. Weld Cnty. Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (explaining affidavits and declarations must be made based on "personal knowledge"). Put simply, the "content or substance" contained in the declaration is admissible. *Friends of Animals*, 15 F.4th at 1272.

[4] *See Harmon v. City of Norman, Okla.*, 61 F.4th 779, 788 (10th Cir. 2023); *see also Kidd v. Taos Ski Valley Inc.*, 88 F.3d 848, 853 (10th Cir. 1996) ("Conclusory allegations are not sufficient to defeat a motion for summary judgment.") (cleaned up).

[5] *Helvie v. Jenkins*, 66 F.4th 1227, 1235 (10th Cir. 2023) (explaining a party challenging an exhibit "must produce specific facts . . . so as to preclude summary judgment"); *see also Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("[O]nly material factual disputes preclude summary judgment; factual disputes about immaterial items are irrelevant.").

Plaintiff asserts that both UMFs ¶¶ 9–10 reach legal conclusions. This is incorrect. The statements recite facts that are supported by admissible exhibits (**Doc. 23 at 3–4; Doc. 23-4; Doc. Doc. 9**). The exhibits set forth specific facts[6] and do not merely state legal conclusions. Plaintiff's objections do not dispute the facts, but rather quibble[7] with their conclusion.

The parties agree that each of the five records contained at least one redaction pursuant to Exemption 6 and that Plaintiff did not contest Defendants' withholding of any portions of the released records. **UMF ¶ 11; Doc. 24 at 5**.

Accordingly, the Court finds there is no dispute regarding the material facts at issue.

## DISCUSSION

As mentioned above, there is no genuine issue of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, having considered the parties' arguments and viewing the record in the light most favorable to Plaintiff, the Court concludes that Defendants are entitled to summary judgment. As explained below, the Court finds the agency conducted a search "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351.

## I. Adequacy and Reasonableness of Defendants' Search

Plaintiff contends Defendants did not conduct a reasonable search for responsive records (**Doc. 24 at 1**). The Court disagrees.

---

[6] *Speidell v. United States*, 978 F.3d 731, 740 (10th Cir. 2020) (determining declarations were not "too conclusory" because they described "matters at issue" and consisted of "more than mere legal conclusions").

[7] Plaintiff's argument is conclusory and unsupported by evidence—and "unsubstantiated allegations carry no probative weight." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). What Plaintiff thinks or hopes regarding the potential existence of more responsive documents is unimportant to the fundamental inquiry regarding the adequacy of the search. *See Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999) (explaining that in order to defeat a motion for summary judgment, evidence must be based on more than speculation, conjecture, or surmise); *see also Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994) (stating the fundamental question in the adequacy of the search analysis is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate").

Defendants provided a declaration[8] from Ms. Leslie Velarde (**Doc. 23-1**). Ms. Velarde is the executive officer and FOIA manager for the Livermore[9] Field Office ("LFO"). Velarde's declaration details the efforts taken to find records related to Plaintiff's request. First, Ms. Velarde forwarded the request to the FOIA point of contact at LLNS. *Id.* **at ¶ 4**. She also forwarded the request to four colleagues at LFO. *Id.* **at ¶¶ 4–5**. In addition to forwarding the email, Ms. Velarde informed her colleagues that they "needed to perform a search for records responsive to the request." *Id.* **at ¶ 5**. She even provided these individuals with suggested search terms. *Id.* **at ¶¶ 6–7**. As explained in the declaration, however, Ms. Velarde also ensured the individuals searched "electronic and physical records." *Id.* None of the four individuals Ms. Velarde emailed found any responsive documents in electronic or physical format. *Id.* **at ¶¶ 8–11**. Given that Part II of Plaintiff's FOIA request named three[10] individuals, Ms. Velarde asked those individuals to search for responsive documents. *Id.* **at ¶ 13**. Mr. Rakestraw and Mr. Carlson located and provided responsive documents to Ms. Velarde through the LLNS FOIA point of contact. *Id.* **at ¶ 13; Doc. 25 at 3**. The five responsive records were then sent to Plaintiff. *Id.* **at ¶¶ 14–15; Doc. 23-4 at 2**.

Again, the agency's reasonable efforts focus on the "process, not the outcome." *Trentadue*, 572 F.3d at 797. To that end, Plaintiff's argument is without merit.

## A. Search terms used

The biggest complaint appears to be that the agency used the exact phrasing requested by Plaintiff—including "and/or"[11] (**Doc. 24 at 8–10**). According to Plaintiff, Defendants should have

---

[8] "Declarations and affidavits are the widely accepted, even the preferable, means for an agency to respond to concerns about the adequacy of a FOIA search." *Trentadue*, 572 F.3d at 807.

[9] LFO is the NNSA's office operating out of the Lawrence Livermore National Laboratory ("LLNL"). LLNL is run by the DOE and NNSA as well as privately administered by Lawrence Livermore National Security, LLC ("LLNS").

[10] The FOIA request specifically named Huban Gowadia, David Rakestraw, and Nils Carlson (**Doc. 23-2 at 1**).

[11] For what it's worth, the Court is unconvinced that the requesting language of "and/or" is clear on its face. *See* ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 116–25 (2012) (explaining the conjunctive and disjunctive canon). In fact, this exact question is pending before the Supreme Court

searched for all combinations of "Z Program" or "Z-Division" with either "COVID-19" or "SARS-CoV-2." However, agencies have discretion in crafting search terms designed to identify responsive documents. *See Rocky Mountain Wild, Inc.*, 56 F.4th at 924 (citing *Inter-Coop. Exch. v. U.S. Dep't of Com.*, 36 F.4th 905, 911 (9th Cir. 2022). And, in fact, the Plaintiff's claim is unsupported by any evidence and directly contrary to the Velarde declaration (**Doc. 25 at 3**).

Of course, Plaintiff is correct that the Government needs to "back up" its assertion that the chosen terms were reasonable (**Doc. 24 at 9**). *See Transgender Law Ctr. v. Immigr. & Customs Enf't*, 33 F.4th 1186, 1195 (9th Cir. 2022). But Defendants used the exact words requested by Plaintiff. Although Plaintiff claims the carried-out search was a "rewriting" of the request, the Court does not view it that way. *See Energy Pol'y Advocates v. Dep't of Interior*, No. 21-1411, 2023 U.S. Dist. LEXIS 47760, at *6 (D.D.C. Mar. 21, 2023) (finding a search adequate when the Government searched "precisely" what Plaintiff asked for). This is especially true given that FOIA petitioner cannot dictate the exact search terms of the request. *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, No. 18-cv-3065, 2021 U.S. Dist. LEXIS 40559, at *43–44 (D. Colo. Mar. 4, 2021), *aff'd* 56 F.4th 913 (10th Cir. 2022); *Nat'l Sec. Couns. v. CIA*, 969 F.3d 406, 410 (D.C. Cir. 2020) ("Agencies should read FOIA requests as drafted, not as either agency officials or the requester might wish it was drafted.") (cleaned up).

Here, the Velarde declaration shows that the search terms provided were only "suggested" and that each searcher used varying terms (**Doc. 23-1 at ¶¶ 7–14**). In total, Defendants searched using: (1) the suggested terms; (2) "Gowadia" "Rakestraw" "Carlson" "SARS-CoV-2" and "origins of COVID-19," and (3) "Z Program" or "Z-Division" AND "origin of COVID-19 and/or SARS-CoV-2" or "structure of SARS-CoV-2 and the origins of COVID-19." **Doc. 23-1 at ¶ 7–**

---

*Pulsifer v. United States*, 143 S. Ct. 978 (2023) (granting the writ of certiorari on whether "and" is conjunctive or disjunctive).

**11**. Not every individual who searched used the exact same phrasing. In fact, the declaration makes clear that "[i]t is not LLNS's standard practice to direct specific search terms" for FOIA requests. **Doc. 23-1 at ¶ 13**. In fact, the "Z-Program manager" searched using the following terms: "origin," "COVID-19," and "SARS-CoV-2." **Doc. 23-1 at ¶ 12**. Tellingly, the Velarde declaration explains that some searchers simply used the suggested terms without indicating the use of "and/or" imbedded therein (**Doc. 23-1**). This undisputed fact undermines Plaintiff's argument that Defendants "inexplicabl[y]" included the phrase "and/or" in their search (**Doc. 24 at 8**). Plaintiff's own exhibit explains that NNSA used "the requested search words individually and in combination." **Doc. 24-2 at 1**. Thus, the search terms were reasonably calculated to find responsive documents—in part, because they were Plaintiff's suggested search terms. Ultimately, the Court finds that any alleged issues with the reasonableness of Defendants' search are without merit.

FOIA was "not intended to reduce government agencies to full-time investigators" on behalf of the Plaintiff. *Assassination Archives & Rsch. Ctr., Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989). Because the search was reasonable, the Court finds no reason to "micromanage" or "Monday-morning-quarterback" the agency's search. *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002); *Immigrant Def. Project v. U.S. Immigr. & Customs Enf't*, 208 F. Supp. 3d 520, 527 (S.D.N.Y. 2016).

**B. Who searched what, when, and where?**

A declaration that "set[s] forth the search terms," is essential for a district court to determine if the search was adequate. *Reps. Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 404 (D.C. Cir. 2017). The Velarde declaration does just that.

The declaration specifically addressed what files were searched and by whom (**Doc. 23-1**). *See Weisberg v. U.S. Dep't of Just.*, 627 F.2d 365, 371 (D.C. Cir. 1980) (explaining agency

affidavits should "denote which files were searched or by whom"). In this case, the Court has evidence that four unnamed LFO employees, the "Z-Program manager," and Huban Gowadia, David Rakestraw, and Nils Carlson searched their emails, calendar, network drive, SharePoint folder, and physical paper files. **Doc. 23-1 at ¶¶ 8–14**.

Certainly, these efforts are sufficient. *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (explaining the declaration must detail "the search terms and type of search performed" as well as aver that "all files likely to contain responsive materials" were searched). Although Plaintiff clearly wishes more documents existed (or thinks they do), such unverifiable hopes are a nonissue. An agency's failure to find a specific document does not render a search inadequate or unreasonable. Nor is it the agency's job to conduct a "fishing expedition" and comb through every single file. *Dale v. IRS*, 238 F. Supp. 2d 99, 105 (D.D.C. 2002). Neither Plaintiff's Complaint (**Doc. 1**) nor their Response (**Doc. 24**) amount to "sufficient evidence in specific, factual form" regarding Defendants' search that would preclude the entry of summary judgment. *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022).

The record contains no "specific, nonspeculative, countervailing evidence" to rebut the good-faith presumption afforded to the Velarde declaration. *Rocky Mountain Wild, Inc.*, 56 F.4th at 922. Plaintiff has not provided any meritorious arguments that contradict the timeliness, reasonableness, or thoroughness of Defendants' search. Nor has Plaintiff asserted any "colorable claim of bad faith." *Hull v. IRS*, 656 F.3d 1174, 1196 (10th Cir. 2011); *see also* **Doc. 25 at 2**. Plaintiff did not dispute the material facts in any meaningful way or contradict the information contained in the Velarde affidavit. Accordingly, there is no genuine dispute as to whether Defendants "reasonably tried to produce responsive records." *Rocky Mountain Wild, Inc.*, 56 F.4th at 922.

**II. Timing of Defendants' Search**

An agency's failure to comply with the 20-day deadline contains a statutory remedy: the right to sue. But, here, Defendants responded within the 20-day window (**UMF ¶¶ 1 & 6**). *See* 5 U.S.C. § 552(a)(6)(A)(i). In fact, Defendants informed Plaintiff that they were going to search for responsive materials. Apparently displeased with the timeliness (**Doc. 24 at 8**), Plaintiff filed suit approximately one month after Defendants sent back their determination of compliance—before receipt of any responsive documents.

In part, this suit focuses on the meaning of the FOIA mandate that an agency shall make the requested records "promptly available." 5 U.S.C. § 552. Does promptly mean immediately? Certainly not. Does it mean quickly? Maybe, but not necessarily. All that promptly means is within a reasonable time. *See* Ken Adams, *"Promptly" and "Immediately"*, ADAMS ON CONTRACT DRAFTING (Feb. 4, 2008), https://www.adamsdrafting.com/promptly-and-immediately/ [https://perma.cc/LCQ9-3APZ]. Informing this Court's analysis is the fact other courts[12] have explained promptly does not mean immediately. Eighty days—fifty-seven of which were business days—elapsed from Defendants' receipt of the FOIA request and their providing of responsive materials (**UMF ¶¶ 6 & 8**). The Court is convinced that Defendants NNSA and DOE "promptly" provided responsive documents.

The elements of a FOIA claim are: (1) improperly (2) withheld (3) agency records. *Kissinger v. Reps. Comm. for Freedom of Press*, 445 U.S. 136, 150 (1980). Where, as here,

---

[12] *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976) (explaining FOIA's promptness mandate means providing responsive materials in "as short a time as possible"); *Ellis v. United States*, 941 F. Supp. 1068, 1077 (D. Utah 1996) ("It should be noted that the purpose of the FOIA time limits is to prevent the government from using administrative delay."); *Aviation Consumer Action Project v. Civil Aeronautics Bd.*, 418 F. Supp. 634, 638 (D.D.C. 1976) (acknowledging that "how quickly" is a "difficult question" in the FOIA context); *Morgan Guar. Tr. Co. of N.Y. v. Bay View Franchise Mortg. Acceptance Co.*, No. 00-Civ-8613, 2002 U.S. Dist. LEXIS 7572, at *17 (S.D.N.Y. Apr. 23, 2002) ("Promptly does not mean immediately, but rather within a reasonable time.") (cleaned up).

Plaintiff concedes receipt of the requested records, there is clearly no improper withholding. Moreover, no matter how "fitful or delayed the release of information under FOIA may be, once all requested records are surrendered" the judiciary has no role to play. *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *see also Putnam v. U.S. Army Rev. Bd. Agency*, No. CIV-22-305, 2023 U.S. Dist. LEXIS 175310, at *12 (W.D. Okla. Sept. 29, 2023) ("Plaintiff does not explain how a now-resolved delay in the release of records is, standing alone, an actionable FOIA violation."). Because the requestor received the responsive documents, any timeliness issue is therefore moot. *See Anderson v. U.S. Dep't of Health & Hum. Servs.*, 3 F.3d 1383, 1384 (10th Cir. 1993); *Newport Aeronautical Sales v. Dep't of the Air Force*, 684 F.3d 160, 168 n.5 (D.C. Cir. 2012).

## CONCLUSION

Given that facts in a FOIA case are rarely disputed, it comes as no surprise that these cases are generally resolved at the summary judgment stage. *World Publ'g Co. v. Dep't of Just.*, 672 F.3d 825, 832 (10th Cir. 2012). This case is no different.

The Court finds and concludes that there is no dispute regarding the material facts. The Velarde declaration makes clear that the search efforts were reasonable—so Defendants are entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (**Doc. 23**) is hereby **GRANTED**.

A separate judgment will be contemporaneously entered with this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE